IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MONIKA K.,[1]

      Plaintiff,

v.                                          Case No. 1:24-cv-00884-JB-LF

FRANK BISGIANO,[2] Commissioner
of the Social Security Administration,

      Defendant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on plaintiff Monika K.'s Motion to Reverse and Remand for a Rehearing with Supporting Memorandum, filed December 2, 2024. Doc. 14. Plaintiff's motion was fully briefed on March 13, 2025. *See* Docs. 14, 20, 21. United States District Judge James O. Browning referred this case to me "to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." Doc. 10. Having read the briefing and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") did not apply the correct legal standard in rejecting a medical provider's opinion, and that remand is appropriate. Accordingly, I recommend that the Court GRANT Plaintiff's motion to remand (Doc. 14).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] On May 6, 2025, Frank Bisgiano was sworn in as Commissioner of Social Security. Consequently, Mr. Bisgiano has been "automatically substituted as a party." FED. R. CIV. P. 25(d). Because "[l]ater proceedings should be in [his] name," the Court has changed the caption of this case. *Id.*; *see also* 42 U.S.C. § 405(g) (stating that such an action "survive[s] notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

## I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[3] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

---

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

## II.    Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show:  (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[4] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61.  If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

---

[4] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III.    Background and Procedural History

Plaintiff was born in 1975 and has a doctorate degree in counseling psychology.  AR 30, 60.[5]  She lives with her husband.  AR 273.  Plaintiff has worked as a school psychologist.  AR 267.  Plaintiff filed an application for Disability Insurance Benefits ("DIB") on November 8, 2021, alleging disability since June 2, 2021, due to heart problems, scarred lungs, insomnia, sleep apnea, esophagus problems, liver problems, acid reflux, migraines, anxiety, depression, and post-traumatic stress disorder ("PTSD").  AR 82.  The Social Security Administration ("SSA") denied her claim initially and on reconsideration.  AR 109, 121.  Plaintiff requested a hearing before an ALJ.  AR 130.  On September 21, 2023, ALJ David Benedict held a hearing.  AR 28.  ALJ Benedict issued his unfavorable decision on December 28, 2023.  AR 43.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2026.  AR 30.  At step one, the ALJ found that Plaintiff had not engaged in substantial, gainful activity since June 2, 2021, her alleged onset date.  *Id.*  At step two, the ALJ found that Plaintiff's Ehlers-Danlos syndrome; fibromyalgia; sacroiliitis; lumbosacral spondylosis; chronic neutropenia; atrial septal defect, status post-surgical repair; Barrett's esophagus; migraine headaches; chronic fatigue; major depressive disorder; generalized anxiety disorder; and PTSD were severe impairments.  *Id.*  At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.  AR 31.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Plaintiff's RFC.  AR 33.  The ALJ found Plaintiff had the RFC to

---

[5] Documents 12-2 through 12-8 comprise the sealed Administrative Record ("AR").  When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

4

perform light work as defined in 20 CFR 404.1567(b), with standing and/or walking for a total of six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday, with the following exceptions: She can understand, remember, and carry out only simple instructions. She can maintain attention and concentration for no longer than two-hour blocks of time. She can occasionally interact with supervisors, co-workers, and the general public. She can use judgment to make only simple work-related decisions. She can perform only occasional production-rate work (e.g., assembly-line/hourly quota work). She can tolerate only occasional changes in the work setting.

*Id.*

At step four, the ALJ concluded that Plaintiff was not capable of performing her past relevant work as a school psychologist. AR 42. At step five, the ALJ found that Plaintiff was able to perform work that existed in sufficient numbers in the national economy, including as a marker, routing clerk, or router. AR 44. The ALJ thus found Plaintiff not disabled at step five. *Id*.

Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. AR 1. On July 11, 2024, the Appeals Council denied the request for review. *Id.* Plaintiff timely filed her appeal to this Court on September 5, 2024. Doc. 1.[6]

## IV. Plaintiff's Claims

Plaintiff raises three main arguments for reversing and remanding this case. She first argues that she submitted new evidence which the Appeals Council erroneously determined was not new, material, and chronologically pertinent. Doc. 14 at 4. She next argues that the ALJ improperly rejected the opinions of her treating providers. *Id.* at 13. Finally, she argues that the ALJ improperly discounted her subjective allegations of migraines contrary to the law. *Id.* at 22. I address each argument in turn.

---

[6] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 3.

## V.    Analysis

### A.    Additional Evidence Submitted by Plaintiff

#### 1.    Background and Law

Plaintiff submitted additional evidence to the Appeals Council on February 26, 2024, including clarification letters and a written rebuttal from her treating providers as well as evidence of an additional office visit.  Doc. 14 at 5.  Plaintiff first argues that the Appeals Council did not exclude the newly submitted evidence because she lacked "good cause."  *Id.* at 5–7.  She next argues that the Appeals Council erred in determining that this evidence was not new, material, or chronologically pertinent.  *Id.* at 4, 7–12.  The Commissioner first responds that the Appeals Council did not "reject" Plaintiff's post-decision evidence for lack of "good cause," but rather concluded that the evidence did not warrant review of the ALJ's decision.  Doc. 20 at 19.  The Commissioner next argues that the post-decision evidence was "largely cumulative of the evidence already before the ALJ" such that the evidence did not have a reasonable probability of changing the outcome.  *Id.* at 20.  In short, the Commissioner argues that the focus should be on whether substantial evidence in the record as a whole supported the ALJ's decision.  *Id.* at 23–24.

Tenth Circuit case law requires the Appeals Council to "consider additional evidence offered on administrative review—after which it becomes a part of our record on judicial review—if it is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision."  *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011).  The materiality standard has been "heightened" in revisions to the regulations and now requires that there be "a reasonable probability that the additional evidence would change the outcome of the decision."  *Emmons v. Saul*, No. 1:19-cv-00102-KBM, 2020 WL 376708, at *5 (D.N.M. Jan. 23, 2020)

(citing 20 C.F.R. §§ 404.970(a), 416.1470(a)) (emphasis omitted).  Of course, just because the

Appeals Council accepts the evidence for consideration does not mean that the ALJ's decision

will be overturned.  *Id.* (the claimant "may not succeed with such evidence, but that is a separate

issue").  That is, when new evidence is submitted to the Appeals Council, the Appeals Council

may accept the evidence into the record for review if it meets the factors in *Krauser*, deny review

because the new evidence fails to meet one of the factors in *Krauser*, or dismiss the request for

review if the request is untimely or lacks good cause.  *See Miller v. Commissioner, SSA*, No. 23-

4034, 2024 WL 2844676, at *9 (10th Cir. June 5, 2024) (discussing denials for review); *Smith v.*

*Berryhill*, 587 U.S. 471, 476 (2019) (discussing dismissals).  The latter two approaches mark the

end of the administrative process, and a claimant seeking further review must appeal to federal

district court.  *Smith*, 587 U.S. at 475–76, 479.  If the Appeals Council accepts the evidence, it

may make a decision on its own—that is, affirm, modify, or reverse the ALJ's decision—or

remand the case to an ALJ for further proceedings.  *Martinez v. Barnhart*, 444 F.3d 1201, 1205

(10th Cir. 2006).

Here, the Appeals Council denied review, AR 1, because it held that the new evidence

failed to meet the *Krauser* factors.  It found that the medical source statements from Deanna

Suggs, FNP, Christine Farley, PMHNP, and Dr. Julie Muche did not "show a reasonable

probability that it would change the outcome of the decision," and that the medical records from

Lovelace did not "relate to the period at issue."  AR 2.  I therefore will not address the issue of

good cause that Plaintiff raises, *see* Doc. 14 at 6–7, because the Appeals Council denied, not

dismissed, the request for review.  Similarly, I will not address Plaintiff's arguments that the

evidence is new; the Appeals Council did not deny review on that basis.  My analysis on the

issue of the newly submitted evidence simply considers whether the Appeals Council should

have accepted Plaintiff's newly submitted evidence rather than denied review; if that is the case,

remand is appropriate.  *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)

("Finally, if the evidence qualifies but the Appeals Council did not consider it, the case should be

remanded for further proceedings.").

    2.  <u>Reasonable Probability that Medical Source Statements Will Change Decision
Outcome</u>

I first address the Appeals Council's decision that the Medical Source Statements from

Deanna Suggs, FNP, Christine Farley, PMHNP, and Dr. Muche "[do] not show a reasonable

probability that [they] would change the outcome of the decision."  AR 2.

    a.  *Deanna Suggs, FNP*

The ALJ found Ms. Suggs' opinions "not persuasive."  AR 40.  He stated that her

"opinions were not well supported by explanations or references to specific objective medical

findings (she only listed the claimant's diagnoses)" and that they "indicate a degree of

impairment that is not consistent with the record as a whole."  *Id.*  To specify, he first cited

record evidence that Plaintiff is "her husband's caretaker," which Plaintiff "has described . . . as

being significantly stressful," which "indicate[s] far greater functioning than opined by Ms.

Suggs."  *Id.*  The ALJ's citations on this point include 1) a statement by Plaintiff that she takes

care of her husband, who "is post-stroke and he is paralyzed, mentally + physically impacted by

the stroke" (AR 260); 2) Plaintiff's April 15, 2023 medical records stating that "she has been

under large amounts of stress as she is a caretaker for 2 family members" (AR 1523); 3)

Plaintiff's May 26, 2023 medical records stating, "She notes some significant stress with care

taking" (AR 1547); and 4) Plaintiff's May 8, 2023 psychiatric evaluation stating, "Patient reports

that she has been stressed out taking care of her husband who recently had been diagnosed with

cavernous malformation and a possible stroke" and that "she has some stress related to taking care of the husband" (AR 1945).  AR 40.

In response, Ms. Suggs provided a Medical Source Statement.  AR 17.  Regarding the caretaking issue, she stated that Plaintiff's caretaking duties for her husband consisted of "a supervisory role a few weeks after her husband's illness" but that Plaintiff "is not involved in any physical or cognitive caretaking duties," and she speculated that because English is Plaintiff's second language, "she may have explained incorrectly her involvement with her husband's condition."  *Id.*  But the records cited by the ALJ indicate that the caretaking efforts were highly stressful, suggesting, at a minimum, an emotional component to the work that could relate to Plaintiff's ability to remain on task.  *See* AR 1899 (Ms. Suggs opined that Plaintiff would be off task at work due to her impairments, including PTSD, for about 20% of the day).  Further, no interpreter was present at Plaintiff's hearing before the ALJ on September 21, 2023, and Plaintiff has a doctorate degree in counseling psychology, suggesting that her English was sufficient to express herself clearly.  *See* AR 55, 60.  This evidence conflicts with Ms. Suggs' assessment of Plaintiff's caretaking duties and ability to articulate those duties, and the ALJ is entitled to resolve conflicts in the record.  *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

Next, the ALJ found Ms. Suggs' opinions unpersuasive because "the overall objective medical evidence (such as physical exams typically showing unremarkable heart, lung, neurological, and musculoskeletal findings . . . and essentially unrevealing cardiac, neoplasia, and rheumatological workups . . .) is not consistent with the extent of physical impairment opined by Ms. Suggs."  AR 40.  Ms. Suggs' Medical Source Statement responded by repeating that Plaintiff "is unable to stand more than 15 minutes, sit more than 15 minutes and walk more than 20 minutes without experiencing pain and fatigue" based on the functional assessments in

her file—that is, she simply reiterates what is in the record.  AR 17.  Similarly, Ms. Suggs described the possible medical implications and symptoms of vascular Ehlers-Danlos syndrome, which Plaintiff presents with, including how the walls of blood vessels and the heart can rupture and lead to early-onset arthritis and "muscle-skeletal and neurological occurrences" that can compound pain, among other issues.  AR 17–18.

The ALJ cited to ample evidence that Plaintiff's heart, lung, neurological, and musculoskeletal systems are unremarkable.  *See* AR 40 (citing AR 517 (11/8/2021 lung, cardiac, neurological, and musculoskeletal exams not indicating problems); AR 522–23 (8/11/2021 heart and musculoskeletal exams normal; respiratory shortness of breath, neurological numbness); AR 812 (1/17/2022 visit in which Plaintiff reported shortness of breath and chronic cough, review of systems indicated normal cardiovascular, pulmonary, and neurological, and musculoskeletal vitals); AR 918 (6/8/2022 visit indicated normal neurological results); AR 996 (12/8/2021 exam indicated normal cardiovascular, pulmonary, musculoskeletal, and neurological results); AR 1074 (7/6/2022 visit indicating normal respiratory, cardiovascular, musculoskeletal, and neurological results); AR 1289 (1/16/2023 visit indicated normal pulmonary and neurological results); AR 1436 (4/19/2023 exam indicated normal musculoskeletal and neurological results[7]); AR 1493–95 (5/9/2022 visit indicating normal cardiovascular and respiratory results, some bulging in lumbar MRI impression); AR 1509 (7/13/22 visit indicating normal mental status); AR 1526 (4/15/2023 review of systems indicating cough, shortness of breath, and chest pain, but physical exam indicating normal cardiovascular, pulmonary, musculoskeletal, and neurological results); and AR 2118–19 (12/8/2022 visit during which Plaintiff reported headaches, exam

---

[7] I note that although the ALJ did not cite to the preceding page, AR 1435, that page indicated normal cardiovascular and pulmonary results as well.

indicated normal neurological results and carotid pulses)).  Similarly, the ALJ cited to ample

evidence that Plaintiff's cardiac, neoplasia, and rheumatological workups were relatively normal.

*See* AR 40 (citing AR 946 (5/11/2022 visit notes indicated that Plaintiff "confirms prior visits

with Sandia rheumatology – no obvious auto-immune disease. She notes no planned follow-up

scheduled"), AR 1245 (5/6/2022 visit notes indicated "hx and exam not typical for a

rheumatology condition"); AR 1436 (4/19/2023 visit indicated no cardiovascular explanation for

Plaintiff's constitutional symptoms), AR 1527 (4/17/2023 visit indicated physical exam,

troponin, complete blood count, basal metabolic panel, and chest x-ray all within normal limits

or unremarkable); AR 1546 (5/26/23 visit indicated "neoplasia work-up wholly reassuring"); and

AR 1564 (1/16/2023 visit indicating "blood count stability" and "lack of clear hormonal . . . or

rheumatological cause" for symptoms)).

 In short, the ALJ cited to a series of medical examinations indicating that Plaintiff's

cardiovascular, pulmonary, neurological, and musculoskeletal systems are generally in good

health—despite occasional reports of shortness of breath and chest pain—and that cardiac,

neoplasia, and rheumatological workups did not point to serious medical issues.  Even though

Ms. Suggs discussed the possible symptoms that Plaintiff might experience based on her vascular

Ehlers-Danlos syndrome, considerable medical evidence in the form of examinations and

workups indicated that the at-risk systems are in reasonably good health.  Again, the ALJ is

entitled to resolve contradictions in the record, *Haga*, 482 F.3d at 1208, and he did so here.

 Finally, the ALJ held that Ms. Suggs' "January 31, 2023 letter was too non-specific and

vague in order to be evaluated as opinion evidence."  AR 40.  Ms. Suggs did not address this

issue in her Medical Source Statement.  *See generally* AR 17–18.

For the above reasons, I recommend that the Court find that the Appeals Council correctly found that Ms. Suggs' Medical Source Statement did not show a reasonable probability that it would change the outcome of the decision.

b.  *Christine Farley, PMHNP*

Ms. Farley's opinion focused on Plaintiff's psychological condition.  *See* AR 1903–04. The ALJ found Ms. Farley's opinion unpersuasive because "it was not well supported by an explanation or references to objective medical findings," because it was "not consistent with the record as a whole," including "the largely unremarkable mental status exam findings from Dr. Farrar[,] . . . the typically unremarkable mental status exams at other visits throughout the record[,] . . . evidence that medication had been helpful for the claimant's mental symptoms[,] . . . and the claimant's ability to be her husband's caretaker."  AR 41.

Ms. Farley responded in her Medical Source Statement that "[t]he patient's MSE (mental status exam) by Dr. Farrer, may be unremarkable but this is not an accurate reflection of the patient's psychological limitations, in my opinion, after treating her since August 2023.  The patient's symptoms and impairments are undulating and can depend on several other factors . . . ."  AR 19.  She stated that Plaintiff "consistently struggles to manage adequate sleep with variable response to medications," that Plaintiff "previously provided care for husband while he recovered from stroke but has not been in this role for the past several months," and that "[i]n my professional opinion, I do not feel that an MSE administered on one occasion is in any way an accurate indication of this patient's mental incapacities."  *Id.*

I addressed the issue of Plaintiff's caretaking record in the previous section; considerable record evidence indicated that Plaintiff's caretaking was substantial and caused her significant

stress.  The stress of caretaking, even caretaking that is strictly supervisory and emotional rather than physical, reasonably may relate to Plaintiff's mental and emotional capabilities.

Ms. Farley also raised the issue that Plaintiff's symptoms "undulat[e]" and "depend on several other factors," rendering "an MSE administered on one occasion" an ineffective metric for determining the extent of Plaintiff's limitations.  AR 19.  The ALJ cited to several "largely unremarkable" mental status exams as well as evidence that medication had been helpful.  *See* AR 41 (citing AR 821–22 (2/27/2022 examination with Dr. Farrar with largely normal mental status examination except mood reported as "[n]erve-wrecked," affect described as "[c]ongruent, dysthymic, restricted range, became tearful at times during interview," and thought process "organized but circumstantial at times," and normal mini mental state exam); AR 513 (11/8/2021 visit notes indicated normal neurological and psychiatric state); AR 523 (8/11/2021 visit notes indicated normal neurological and psychiatric state); AR 740 (8/17/2021 visit notes indicated Plaintiff "is anxious about continuing Trazodone for insomnia. She has tried many medications like Hydroxyzine, but none has helped" and psychiatric assessment was normal except for "anxious" mood and affect); AR 743 (8/31/2021 visit notes indicate normal psychiatric and neurological results except that "[m]ood and affect are anxious and sad"; Plaintiff declined offer of counseling); AR 748–49 (1/6/2022 visit notes indicated normal neurological and psychiatric state but "trazodone is no longer working"); AR 868 (2/9/2022 visit notes indicated normal psychiatric state); AR 907 (4/21/2022 visit notes indicated normal psychiatric state); AR 1086 (11/30/2022 visit notes indicated normal objective neurological and psychiatric state, review of systems indicated headaches and insomnia); AR 1342 (10/12/2022 visit notes indicated normal psychiatric state); AR 1436 (4/19/2023 visit notes indicated normal neurological and psychiatric state); AR 1493 (5/9/2022 visit notes indicated normal mental status exam results); AR 2146

(9/6/2023 visit notes indicated normal psychiatric results)).[8]  To summarize, the ALJ cited to visits from August of 2021 to April of 2023, all of which contained relatively normal psychiatric and neurological findings—not just findings from a single exam on a single date.  It is reasonable, therefore, for the Appeals Council to find that Ms. Farley's Medical Source Statement about the fluid nature of Plaintiff's impairments would not change the ALJ's results when the ALJ already had considered Plaintiff's mental state at various examinations spanning approximately a year and a half.

For the above reasons, I recommend that the Court find that the Appeals Council correctly found that Ms. Farley's Medical Source Statement did not show a reasonable probability that it would change the outcome of the decision.

### c.  *Dr. Julie Muche*

The ALJ found Dr. Muche's opinion unpersuasive because "it was not well supported by the objective findings in her own contemporaneous chart notes" and "not consistent with the record as a whole," including "the overall objective medical evidence."  AR 40.  Dr. Muche responded in a medical source statement that "[i]t is my medical opinion that [Plaintiff] is unable to be productive in any substantial work capacity at this time due to her multiple conditions that I

---

[8] The ALJ also cited to various notes indicating that medication had helped Plaintiff's symptoms. *See* AR 41 (citing AR 1738–39 (4/10/2023 visit notes indicated that Plaintiff was "doing good in terms of sleep" and that triazolam "is working really well" but that overall Plaintiff is struggling due to family stress and neutropenia; provider states "[i]nsomnia has been a lot better with addition of triazolam"); AR 1742–43 (2/28/2023 visit notes indicated that Plaintiff was "doing good in terms of sleep" and that triazolam "is working really well"); AR 1746 (1/31/2023 visit notes indicated that triazolam "is working really well" but Plaintiff's stated mood is "not so good" and "affect is dysphoric, congruent with stated mood and generally appropriate to the situation" with no suicidal or homicidal ideations or auditory or visual hallucinations, fair insight and judgment, and otherwise normal mental status examination); AR 2137 (8/23/2023 visit notes indicate that Plaintiff was "[t]aking gabapentin and she states that it also benefits her anxiety and PTSD")).

have evaluated over time including fibromyalgia, dysautonomia, Ehlers-Danlos, chronic left headache, and chronic pain from multiple musculoskeletal conditions." AR 20. She clarified Plaintiff's caretaking activities were supervisory in nature and included providing emotional support, but did not require physical labor. *Id.*

In finding Dr. Muche's opinion unpersuasive, the ALJ stated that Plaintiff's caretaking activities "indicate far greater functioning than opined by Dr. Muche, as it is unclear how she [Plaintiff] would care for his [her husband's] daily needs if she were having to need frequent breaks or miss several days of work per month." AR 40–41. Dr. Muche's report assessed Plaintiff's limitations based on fibromyalgia and symptoms largely related to pain and physical weakness. AR 2139. The other two providers discussed above addressed mental health symptoms and Plaintiff's time spent off-task, which likely impacted Plaintiff's ability to care for her husband. Because Dr. Muche's opinion was based on Plaintiff's pain and physical weakness, not emotional or mental conditions, Plaintiff likely still could supervise her husband's care and provide emotional support to him despite her own physical limitations. The ALJ appeared to assume Plaintiff's caretaking duties were physical when he stated that those duties contradicted Dr. Muche's findings, thus, Dr. Muche's statements about the nature of Plaintiff's caretaking duties being supervisory and emotional rather than physical are relevant.

However, the ALJ found Dr. Muche's opinion unpersuasive for multiple reasons, only one of which is the caretaking issue. He also addressed the objective medical evidence, which he thought was inconsistent with Dr. Muche's opinion. AR 41. Regarding the objective medical evidence, Dr. Muche only repeated that she believed Plaintiff cannot work and recited Plaintiff's diagnoses, which were already in her original opinion. *See* AR 20; AR 2147 (listing Plaintiff's "EDS, with dysautonomia symptoms, fibromyalgia," "[c]hronic left temple pain with left

auriculotemporal syndrome," and "[c]hronic cervicalgia with myofascial pain spasm," among others).  Because this additional evidence is duplicative of the information in the original report, I recommend that the Court find that the Appeals Council correctly found that Dr. Muche's Medical Source Statement did not show a reasonable probability that it would change the outcome of the decision.[9]

### 3.  Lovelace Medical Records

The Appeals Council also stated, "You submitted Medical Records from Lovelace dated January 24, 2024 (4 pages).  The Administrative Law Judge decided your case through December 28, 2023.  This additional evidence does not relate to the period at issue.  Therefore, it does not affect the decision about whether you were disabled beginning on or before December 28, 2023."  Plaintiff responds that the Lovelace records are "chronologically pertinent" because they include "the objective evidence the ALJ claimed was missing and address[] diagnoses that were before the ALJ . . . ." Doc. 14 at 12.

The updated records included a statement that "Patient has recently been ill since July with bacterial and viral infections including sinusitis and infection into the jaw which consequently led to tooth extraction," a statement that "Patient in general has depressed [sic] with fatigue," clarifying statements about Plaintiff's caretaking role, a reiteration of Plaintiff's diagnoses of "Ehlers-Danlos fibromyalgia" and symptoms of dysautonomia, and discussion of Plaintiff's body pain and numbness.  AR 21.  The only discussion that pertains to the period

---

[9] As discussed below, I recommend that the Court find that the ALJ improperly rejected Dr. Muche's opinion.  However, the ALJ's erroneous handling of Dr. Muche's opinion is not the question at hand in this section; rather, the inquiry here is whether the additional evidence (in which Dr. Muche largely repeats her earlier findings) is new, material, and chronologically pertinent.  Because the additional evidence is repetitive of Dr. Muche's earlier findings, it is not likely to change the outcome of the ALJ's decision, and therefore is not material.

before December 28, 2023, is that Plaintiff had bacterial and viral infections—temporary conditions not pertinent to her claim of disability—and the clarification of Plaintiff's caregiver role, which I already have addressed.  Admittedly, these portions of the records likely are chronologically pertinent in that they relate to the time period at issue in this case.  However, the chronologically pertinent portions of the record are not material.[10]  Plaintiff's bacterial and viral infections are not alleged to be long-term disabling conditions, and even if the Appeals Council determined that Plaintiff's caregiving was purely supervisory, the ALJ cited other reasons to find Dr. Muche's opinion unpersuasive, so the decision regarding Plaintiff's caregiving would not have changed the outcome.

Accordingly, I recommend that the Court find that the Appeals Council correctly denied review based on the Lovelace medical records.

### 4.  Conclusion

For the above reasons, I recommend that the Court find that the new evidence Plaintiff submitted does not meet the requirements for the Appeals Council to exhibit it in the record.

### B.  Opinions of Plaintiff's Treating Providers

Plaintiff next argues that the ALJ improperly rejected the opinions of her treating providers (Ms. Suggs and Dr. Muche), and that the ALJ's findings were not based on substantial evidence.  Doc. 14 at 13.  I recommend that the Court find that the ALJ improperly rejected Dr. Muche's opinion and that remand is appropriate on that basis.  Because I recommend finding that

---

[10] The question of whether evidence is new, material, chronologically pertinent, and shows a reasonable likelihood of changing the outcome of the case, such that the Appeals Council should have exhibited it, is one that the district court reviews *de novo*.  *See Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003).  "In de novo review the court is to make a fresh determination of the question at issue in its own evaluation of the applicable law," including by relying on different factors than the one the Appeals Council cited.  *Lindsey Marie C. v. Kijakazi*, Civil Action No. 22-1097-JWL, 2023 WL 2809921, at *4 (D. Kan. Apr. 6, 2023) (emphasis omitted).

the ALJ did not follow the correct legal standards in considering Dr. Muche's opinion, I will not address the remaining issues (the ALJ's treatment of Ms. Suggs's opinion and of Plaintiff's subjective allegations of migraines) because they may be affected by the ALJ's treatment of this case on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

The ALJ found Dr. Muche's opinion that Plaintiff "would miss three or more days of work per month; would need three or more extra 15-minute breaks; and would miss about 25% or more of the day" unpersuasive. AR 40. The ALJ found this opinion unpersuasive "because it was not well supported by the objective medical findings in her own contemporaneous chart notes," which involved many "unremarkable" findings—Plaintiff was "pleasant and in no acute distress," "[h]er extremities were warm with no edema," she had a normal gait without any assistive devices, and she had no "increased work of breathing." *Id.* The ALJ also noted "unremarkable heart, lung, neurological, and musculoskeletal findings" as well as "unrevealing cardiac, neoplasia, and rheumatological workups" in other documentation, which he found inconsistent with Dr. Muche's opinion. AR 41.

Dr. Muche's assessment, in which she noted her opinions on Plaintiff's limitations, is for fibromyalgia. AR 2139. On the same day as the assessment, Dr. Muche conducted a fibromyalgia examination that showed that Plaintiff had "widespread pain index symptom severity and tenderness of all the 18 points on examination including neck upper back lower back bilateral shoulders bilateral upper and lower arms bilateral buttocks upper leg bilaterally however not lower leg," and "[u]pper chest wall positive for tenderness." AR 2146–47. Dr. Muche noted that Plaintiff's chronic pain is not stable. *Id.* at 2147.

The level of physical pain and tenderness that Dr. Muche's noted in her contemporaneous chart does not contradict the limitations Dr. Muche set out in her opinion. Dr. Muche's opinion

is explicitly based on fibromyalgia and indicated that Plaintiff had experienced widespread pain and tenderness in all four quadrants of her body for at least three months "AND evidence that other disorders that could cause the symptoms or signs were excluded, such as lab work."  AR 2139; *see also* SSR 12-2P, 2012 WL 3104869, at *3 (July 25, 2012) (diagnostic criteria of fibromyalgia includes "[e]vidence that other disorders that could cause the symptoms or signs were excluded," making note of other conditions that could have similar symptoms or signs including "rheumatologic disorders, myofascial pain syndrome, polymyalgia rheumatica, chronic Lyme disease, and cervical hyperextension-associated or hyperflexion-associated disorders"). That is, it is a diagnostic criterion of fibromyalgia that Plaintiff's lab work gave no explanation for Plaintiff's widespread pain.  The ALJ took this evidence, which was fundamentally necessary for a fibromyalgia diagnosis in the first place, and instead concluded that it contradicted Dr. Muche's conclusions about the limitations that Plaintiff's fibromyalgia produced.

The Tenth Circuit has held that "objective evidence is relevant to determining whether medically determinable fibromyalgia is disabling."  *Nielsen v. Commissioner, SSA*, No. 21-4136, 2022 WL 15570650, at *3 (10th Cir. Oct. 28, 2022).  It therefore is not improper for the ALJ to consider, as one factor among many, that the objective evidence does not explain Plaintiff's pain. However, objective evidence is not the only consideration: if objective evidence "does not substantiate" the claimant's asserted limitations, "all of the evidence in the case record" is pertinent, "including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms."  *Id.* at *4 (quoting SSR 12-2P, 2012 WL 3104869, at *5).

The only other evidence that the ALJ relied on in finding Dr. Muche's opinion unpersuasive is that "the claimant's activities in being her husband's caretaker indicate far greater functioning than opined by Dr. Muche, as it is unclear how she would care for his daily needs if she were having to need more frequent breaks or miss several days of work per month." AR 40–41. But, as discussed at length above, Plaintiff's caretaking duties were not physical in nature. Further, the ALJ only pointed to evidence that these caretaking duties were stressful, not physically demanding. *See* AR 260, 1523, 1547, 1945. Even without reference to Dr. Muche's medical source statement clarifying the nature of Plaintiff's caretaking duties, stress does not necessarily implicate physical demands or fatigue. Evidence of plaintiff's stress from her caretaking responsibilities does not undermine Dr. Muche's opinion, which largely discussed Plaintiff's physical limitations, such as pain and fatigue. *See* AR 2139–40 (identifying mostly physical symptoms and responding to questions pertaining to the effects of "your patient's pain, fatigue, and/or other symptoms"). In short, the ALJ pointed to no evidence that contradicted or cast doubt on Dr. Muche's opinion.

The Court's task is to consider "whether the [ALJ's] factual findings are supported by substantial evidence in the record," with substantial evidence defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007) (citation omitted). I recommend that the Court find that the ALJ failed to support his finding that Dr. Muche's opinion was unpersuasive with substantial evidence. Accordingly, I recommend that the Court remand the case so the ALJ can properly consider Dr. Muche's opinion.

## VI.    Conclusion

I recommend that the Court GRANT Plaintiff's motion to remand (Doc. 14).

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  *Id.*  In other words, if no objections are filed, no appellate review will be allowed.

---

LAURA FASHING
UNITED STATES MAGISTRATE JUDGE